UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTUN KARTASHYAN,[1] | No. 1:25-cv-1526-DC-SCR |
| Petitioner, | |
| v. | ORDER AND |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | FINDINGS AND RECOMMENDATIONS |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

Petitioner was born in Armenia and reportedly entered the United States without inspection and without valid entry documents on October 6, 2024. ECF No. 5-2 at 2-3 (Record of Deportable/Inadmissible Alien). He was apprehended by Customs and Border Patrol ("CBP") on the same day. ECF No. 5-2 at 3. The Department of Homeland Security ("DHS") determined

---

[1] Petitioner's name on all immigration documents is Martun Kartashyan. See ECF No. 5-2 (Record of Deportable/Inadmissible Alien). Therefore, his name has been corrected in the caption of this case. The Clerk of Court is ordered to update the docket accordingly.

1

1 that he was inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and
2 Nationality Act ("INA") and issued him a Notice and Order of Expedited Removal on October 7,
3 2024 based on his lack of valid entry documents. ECF No. 5-2 at 10. Exercising its parole
4 authority pursuant to Section 212(d)(5)(A) of the INA, DHS released petitioner from immigration
5 custody on October 25, 2024. ECF No. 5-2 at 16 (Interim Notice Authorizing Parole). The
6 Notice authorizing parole states that it is "valid for one year… and will automatically terminate
7 upon your departure or removal from the United States or at the end of the one-year period unless
8 ICE provides you with an extension at its discretion." ECF No. 5-2 at 16. The Notice further
9 states, "ICE may also terminate parole on notice prior to the automatic termination date" and that
10 "[p]arole is entirely within the discretion of ICE and can be terminated at any time and for any
11 reason." Id. Petitioner was released to reside in Glendale, California. ECF No. 5-2 at 17.

12 On November 20, 2024, ICE officers arrested petitioner when he reported as directed to
13 the Los Angeles ICE Office. ECF No. 1 at 5; see also ECF No. 5-2 at 2-3. Petitioner's arrest was
14 reportedly based on ICE's determination that he had "a final order of removal"—the same
15 expedited removal order that had existed when ICE released him less than a month earlier. ECF
16 No. 5-2 at 2-3. Since November 20, 2024, petitioner has remained detained.

17 An asylum officer determined that Petitioner stated a credible fear of persecution on
18 January 13, 2025, and issued him a Notice to Appear before an immigration judge ("IJ") on
19 January 23, 2025. ECF No. 5-2 at 6. On February 18, 2025, petitioner filed an application for
20 asylum, withholding of removal, and protection under the Convention Against Torture ("CAT")
21 based on his fear of persecution if returned to Armenia. At petitioner's first hearing in
22 immigration court, the IJ "sustained removability as charged" and designated Armenia "as the
23 country of removal, should removal be necessary," but granted petitioner a continuance in order
24 to obtain counsel. ECF No. 5-1 at 3 (Decl. of Deportation Officer Jaimes); ECF No. 5-2 at 21 (IJ
25 Order). Petitioner appeared with counsel at a subsequent hearing on February 28, 2025 and was
26 granted another continuance in order to submit further evidence and a declaration supporting his
27 request for asylum, withholding of removal, and CAT protection. ECF No. 5-1 at 3. According
28 ////

1  to respondents, petitioner received several more continuances in order to submit additional
2  evidence.  ECF No. 5-1 at 3.

3  Petitioner's final merits hearing was held on September 12, 2025.  The IJ issued a written
4  decision on October 30, 2025, denying petitioner's asylum application but granting him
5  withholding of removal to Armenia.  ECF No. 5-2 at 31-32.  In light of the withholding of
6  removal, petitioner's application for CAT relief was held in abeyance.  Id. at 32.  The IJ found
7  that "DHS has neither established a fundamental change in circumstances such that [petitioner's]
8  life or freedom would no longer be threatened in Armenia, nor established that [petitioner] could
9  safely and reasonably relocate within Armena."  Id. at 30.  On November 25, 2025, DHS
10 appealed the order granting withholding of removal.  ECF No. 5-1 at 4.

11 Petitioner has now been detained more than thirteen months.  ECF No. 1 at 5; see also
12 ECF No. 5-2 at 2-3.  Unless the BIA overturns the IJ's grant of withholding of removal, DHS
13 cannot deport petitioner to Armenia.  Petitioner alleges that no third countries are willing to
14 accept him.  ECF No. 1 at 5.

15 Petitioner filed the pending § 2241 petition pro se, contending that his prolonged detention
16 without a bond hearing violates his Fifth Amendment right to due process as well as the
17 Administrative Procedure Act.  ECF No. 1.  Petitioner also asserts that his detention exceeding
18 six months without so much as a bond hearing is unconstitutional under both Zadvydas v. Davis,
19 533 U.S. 678 (2001), and Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  ECF No. 1 at 6-15.
20 By way of relief, petitioner requests immediate release from immigration custody, with
21 appropriate conditions of supervision, if necessary, after taking his ability to pay a bond into
22 consideration.  ECF No. 1 at 2. In the alternative, petitioner requests a bond hearing before an IJ
23 where the government bears the burden of demonstrating, by clear and convincing evidence, that
24 petitioner is a flight risk or a danger to the community.  ECF No. 1 at 2.

25 On November 26, 2025, respondents filed a motion to dismiss the pending § 2241
26 petition.[2]  ECF No. 5.  Respondents contend that petitioner is subject to mandatory detention

---

[2] Since respondents challenge only the merits of the § 2241 petition and do not raise any defects in the pleading that would warrant its dismissal, it is properly construed as an answer.  See Rule

3

1   pursuant to 8 U.S.C. § 1225(b)(1) because he entered without inspection and is considered an
2   "applicant for admission" to the United States. ECF No. 5 at 2-3. If petitioner does not appeal
3   the denial of his asylum request to the Board of Immigration Appeals by December 1, 2025,
4   respondents further assert that he is subject to detention pursuant to 8 U.S.C. § 1231(a)(2)(A) for
5   the 90 day removal period. ECF No. 5 at 1. Respondents point out that "[t]he Supreme Court has
6   never utilized the multi-factor "balancing test" of Mathews v. Eldridge, 424 U.S. 319 (1976), in
7   addressing due process claims raised by non-citizens held in civil immigration detention, despite
8   multiple opportunities to do so since Mathews was decided. ECF No. 5 at 3. Respondents take
9   the position that petitioner has no constitutionally protected liberty interest in his freedom from
10  confinement during removal proceedings, and his due process rights are limited to whatever
11  procedure Congress authorized. ECF No. 5 at 3-4 (quoting United States ex rel. Knauff v.
12  Shaughnessy, 338 U.S. 537, 544 (1950)).

13  While acknowledging that "district courts recognize a Due Process requirement regarding
14  prolonged immigration detention under § 1225(b)(1)," respondents assert that the Mathews
15  factors weigh in favor of the government because petitioner is responsible for the delays in his
16  removal and has received "substantial process." ECF No. 5 at 5-6. Due to the lack of clarity in
17  the current state of immigration law, respondents also address the due process factors under
18  Lopez v. Garland, 631 F. Supp. 3d 870 (E.D. Cal. 2022). Under this standard, respondents argue
19  that the factors weigh in their favor because petitioner is not subject to indefinite detention and
20  because they are not responsible for any delays in his removal proceedings. ECF No. 5 at 6-7. In
21  addition to the motion to dismiss, respondents also filed a declaration from a deportation officer
22  along with additional exhibits from petitioner's immigration file. ECF Nos. 5-1; 5-2.

23  Petitioner, through appointed counsel, filed an opposition to respondents' motion to
24  dismiss on December 15, 2025. ECF No. 12. Petitioner first points out that he complied with all
25  reporting requirements after DHS released him on parole in October 2024, and that, as a result, he
26  has a liberty interested protected by the Due Process Clause in being free from immigration

---

28  5(b) of the Rules Governing Section 2254 Cases; see also Rule 1(b) (allowing the § 2254 Rules to be applied to other types of habeas corpus petitions).

1  detention. ECF No. 12 at 2-3.  Furthermore, petitioner contends that his re-detention following
2  his release on parole did not convert him to an arriving non-citizen who is subject to mandatory
3  detention under 8 U.S.C. § 1225(b)(2).  ECF No. 12 at 5.  Petitioner also submits that all the
4  Mathews factors weigh in his favor.  ECF No. 12 at 3.  In support of this contention, petitioner
5  attached a copy of his February 2025 bond request that identifies his significant ties to the
6  community, including a United States citizen sponsor.  ECF No. 12-1 at 3.  Notably, petitioner
7  points out that respondents do not argue that petitioner is a flight risk or a danger to the
8  community.  ECF No. 12 at 3.  To the extent that "[r]espondents contend that [p]etitioner should
9  be blamed for the duration of his detention [in] the form of continuances," it is respondent DHS
10 that has appealed the grant of withholding of removal in petitioner's immigration case.  ECF No.
11 12 at 4 (citing Lopez v. Garland, 631 F. Supp. 3d 870, 880 (E.D. Cal. 2022)).  As a result of
12 DHS's appeal of the grant of withholding of removal, petitioner's detention "is likely to increase
13 significantly beyond the 12 months he has already spent detained."  ECF No. 12 at 6.
14 Furthermore, petitioner argues that he does not yet have an administratively final order of
15 removal, so he is not being detained pursuant to 8 U.S.C. § 1231(a)(2)(A).  Id. at 5.  For all these
16 reasons, petitioner requests his release from immigration custody while DHS's appeal continues,
17 as well as a pre-deprivation due process hearing before any re-detention.  Id. at 4 (citing Doe v.
18 Becerra, 787 F. Supp. 3d. 1083, 1094 (E.D. Cal. 2025)).  In the alternative, petitioner seeks a
19 meaningful bond hearing within seven days before a neutral arbiter pursuant to 8 U.S.C. § 1226.
20 Id.  Since petitioner is also concerned about respondents' potential attempt to remove him to a
21 third country, petitioner asks that respondents be required to provide him notice and an
22 opportunity to be heard prior to his re-detention and removal to a third country.  Id. at 6-7.
23       In their reply, respondents continue to contend that petitioner is an "applicant for
24 admission" to the United States and, therefore, is subject to mandatory detention under 8 U.S.C. §
25 1225(b)(2) regardless of the length of his period of removal.  ECF No. 14.  In support of this
26 contention, they cite to the minority of cases supporting their interpretation, including the Board
27 of Immigration Appeals' decision in In re Matter of Hurtado, 29 I&N Dec. 216 (2026).  ECF No.
28 14 at 2.  Additionally, respondents point out that petitioner is not a member of the bond eligible

1    class members in Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. 2025),
2    because he did not enter the United States without inspection. Id. Respondents request that
3    petitioner's § 2241 petition be denied. Id. at 2.
4        By way of supplemental authority, petitioner submits a copy of the final judgment in
5    Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. 2025), that "found that
6    Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory
7    detention under § 1225(b)(2)…." ECF No. 15-1 at 2.

8    **II.   Applicable Detention Statute**

9        The statutory and regulatory framework governing petitioner's immigration proceedings,
10   his release on supervision, and the subsequent revocation of his supervision is complex. "Where
11   a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or
12   discretionary, as well as the kind of review process available to him if he wishes to contest the
13   necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).
14       Neither of the parties clearly explain what statute currently governs petitioner's detention.
15   Respondents argue variously that petitioner is subject to mandatory detention "during the
16   pendency of removal proceedings" under 8 U.S.C. § 1225(b)(2), or "for the duration of his
17   removal proceedings" under § 1225(b)(1).[3] ECF No. 5 at 1-2, 7. Petitioner does not attempt to
18   articulate which detention statute applies, and instead notes that respondents' argument that
19   petitioner is detained under § 1225(b)(2) "has been challenged where Respondents have treated
20   detention as discretionary and offered release through conditional parole or release on
21   recognizance." ECF No. 12 at 5. As explained below, the Court finds that petitioner's detention
22   was initially governed by § 1225(b)(1) and concludes—absent the presentation of contrary
23   authority—that statute continues to govern his detention.
24       In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court explained the removal
25   and detention scheme that applies to "applicants for admission":
26

---

[3] Respondents also argue that "Petitioner may soon be detained" under 8 U.S.C. § 1231 "if no appeals to the Board of Immigration Appeals" are filed, ECF No. 5 at 1, but respondent DHS had already filed such an appeal when respondents made that argument.

> [A]pplicants for admission fall into one of two categories, those covered by [8 U.S.C.] § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to [non-citizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other [non-citizens] designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

Id. at 287 (emphasis added).

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain [non-citizens]. [Non-citizens] covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). [Non-citizens] who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those [non-citizens] "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Ibid.

Id. at 287-88. "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) [non-citizens] are detained for "further consideration of the application for asylum," and § 1225(b)(2) [non-citizens] are in turn detained for "[removal] proceeding[s]."

Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(7)—§ 212(a)(7) of the INA—and placed in expedited removal proceedings. He also applied for asylum after passing the credible fear process. His initial detention was accordingly governed by § 1225(b)(1), which mandated his "det[ention] for further consideration of the application for asylum." 8 U.S.C. §

1225(b)(1)(B)(ii). To the extent that respondents suggest that petitioner's detention was (or is) also governed by § 1225(b)(2)(A), that position is without merit. As the statutory scheme makes clear, § 1225(b)(2)(A) "shall not apply" to a non-citizen "to whom paragraph [(b)](1) applies[.]" 8 U.S.C. § 1225(b)(2)(B)(ii). The statutory scheme thus makes each of the two processing and detention categories exclusive. The Supreme Court reads the statute in the same way, noting that "applicants for admission fall into *one of two* categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287 (emphasis added); see also Matter of M-S-, 27 I. & N. Dec. 509, 510 (BIA 2019) (distinguishing between the processes that apply to a non-citizen who is an applicant for admission under § 1225(b)(1) and one who is an applicant for admission under § 1225(b)(2)). Section 1225(b)(1) and § 1225(b)(2) thus describe separate and non-overlapping categories, and petitioner's detention was initially governed by the former.

Non-citizens detained under § 1225(b)(1) are subject to mandatory detention "until certain proceedings have concluded," which in petitioner's case is a proceeding for "further consideration of the application for asylum." Jennings, 583 U.S. at 297. "The plain meaning of [this] phrase[] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum[.]" Id. at 299. "Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention." Id. at 297.

A different statute, 8 U.S.C. § 1231(a), governs detention after the entry of a final order of removal. Detention during a 90-day "removal period" after the entry of a final order of removal is mandatory. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)). An order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order." Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8

U.S.C. § 1101(a)(47)(B)). Given that respondent DHS appealed the IJ's grant of withholding of removal to the BIA, petitioner's order of removal is not yet administratively final and his detention is not governed by § 1231(a).

As explained above, petitioner's detention was initially governed by § 1225(b)(1). The Court is not aware of any binding authority on the question of whether § 1225(b)(1) continues to govern an individual's detention even where, as here, the IJ sustained the charge of removability but granted withholding of removal and DHS appealed that grant of withholding to the BIA. It is hardly clear that under these circumstances the "application for asylum" is under "further consideration" such that § 1225(b)(1)(B)(ii) continues to apply. However, petitioner has not meaningfully argued that some other detention statute applies under these circumstances, and the Court accordingly concludes that § 1225(b)(1) continues to govern petitioner's detention.[4] With this statutory background in mind, the Court proceeds to determine whether petitioner's detention violates due process.

**III.    Analysis**

**A. Petitioner Can Viably Assert a Due Process Right to a Bond Hearing**

Respondents argue that as an unadmitted non-citizen, petitioner's due process rights include no more than "the procedure authorized by Congress[.]" ECF No. 5 at 4 (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950)). Respondents reason that petitioner accordingly has no due process right to release or a bond hearing, given that he is subject to a mandatory detention statute that does not provide for bond hearings and that allows for release only on parole at respondents' discretion. Id. Petitioner argues that his conditional release on parole created a liberty interest protected by due process. ECF No 12 at 2-3.

The Court finds that petitioner has a meaningful liberty interest under the Due Process Clause of the Fifth Amendment. Petitioner entered the United States without being inspected.

---

[4] Petitioner argues that his re-detention after release "did not convert him into an arriving noncitizen" subject to detention under § 1225(b). ECF No. 12 at 5. However, the cases cited by petitioner to suggest that some other detention authority applies involved individuals who DHS placed in generic removal proceedings upon arrest, as opposed to individuals, like petitioner, who DHS placed in expedited removal proceedings.

9

ECF No. 5-1 at 2.  CBP officers apprehended him within the United States, "at or near Otay Mesa, California."  Id.  He then sought asylum and other relief from removal.  Petitioner's due process rights are indistinguishable from the rights of asylum seekers identified in Padilla v. ICE, 704 F. Supp. 3d 1163 (W.D. Wash. 2023).  Padilla is a putative class action concerning the due process rights of asylum seekers who, like petitioner, entered the United States without inspection, and are being held without a bond hearing.  In rejecting the government's motion to dismiss, the Padilla court explained why such individuals have strong claims on liberty under the Due Process Clause—claims that require more protection than the mandatory detention statute, § 1225(b)(1), and parole statute, § 1182(d)(5), provide:

> The Court finds that Plaintiffs have alleged a right to substantive due process to bond hearings.  As the Ninth Circuit concluded in affirming the Court's preliminary injunction, "all persons in the United States—regardless of their citizenship status, means or legality of entry, or length of stay—are entitled to the protections of the Due Process Clause."  Padilla [v. ICE], 953 F.3d [1134,] 1142 (citing Zadvydas v. Davis, 533 U.S. 678, 693).  As the Court in Zadvydas explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  533 U.S. at 693.  Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk.  See id. at 690-91.  And the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.  See United States v. Salerno, 481 U.S. 739, 750–51 (1987); Foucha v. Louisiana, 504 U.S. 71, 79 (1992); Kansas v. Hendricks, 521 U.S. 346, 360 (1997).

\*\*\*

> The Court finds Plaintiffs have sufficiently alleged a procedural due process claim.

\*\*\*

> "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas, 533 U.S. at 690.  Non-punitive detention in the immigration context violates the Due Process Clause unless "a special justification ... outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'"  Zadvydas, 533 U.S. at 690 (quoting Hendricks, 521 U.S. at 356).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).  So while "[t]he government has legitimate interests in protecting the public and in ensuring that non-citizens in removal proceedings appear for hearings, ... any detention

> incidental to removal must 'bear[ ] [a] reasonable relation to [its] purpose.'" Hernandez, 872 F.3d at 990 (quoting Zadvydas, 533 U.S. at 690). To satisfy procedural due process, non-punitive detention must be accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure the detention serves the government's legitimate goals.
>
> ***
>
> Plaintiffs continue to allege a viable procedural due process claim. First, they have alleged a substantial liberty interest in being free from confinement and an interest in preventing arbitrary detention. Second, Plaintiffs have alleged that the parole process available to them under 8 U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing particularly since it does not test the necessity of detention. The parole process does not afford the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she may present witness testimony or evidence. See 8 C.F.R. § 212.5. Additionally, the ICE detention officer need not make any factual findings or provide their reasoning, and there is no apparent right to an administrative appeal. This process is not an adequate substitute for a bail hearing to test the legitimate need for continued detention. See Zadvydas, 533 U.S. at 692. Lastly, Plaintiffs have sufficiently alleged that the government lacks a legitimate interest in denying bond hearings before a neutral decisionmaker to detained noncitizens with pending bona fide asylum applications. It is true that "[t]he government has legitimate interests in protecting the public and in ensuring that non-citizens in removal proceedings appear for hearings ...." Hernandez, 872 F.3d at 990. But accepting Plaintiffs' allegations as true, the government's interest in protecting the public or avoiding additional administrative burdens do not outweigh the countervailing liberty interest at stake.

Padilla, 704 F.Supp.3d at 1172-73 (cleaned up).[5] The Court finds the reasoning of Padilla on this issue persuasive and adopts it.

Moreover, the Court concludes that petitioner also has an enhanced due process interest in liberty due to his earlier conditional release on parole.[6] See Khan v. Noem, No. 1:25-cv-01411-EPG-HC; 2025 WL 3089352, at *5 (E.D. Cal. Nov. 5, 2025) ("Relying on Morrissey [v. Brewer, 408 U.S. 471 (1972)], courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody."). While this release was relatively brief—lasting less than a month—it reportedly involved petitioner beginning to develop ties to the community. See J.E.H.G., v. Chestnut, et al., No. 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *11 (E.D. Cal. Dec. 9, 2025) (finding a risk of erroneous deprivation of liberty for a noncitizen

---

[5] The Ninth Circuit's earlier decision in Padilla, 952 F.3d 1134 (9th Cir. 2020) had been vacated and remanded by the Supreme Court for further consideration in light of Thuraissigiam. As noted herein, the district court's subsequent decision distinguished Thuraissigiam.

[6] Respondents argue that "non-citizens subject to mandatory detention, who were not admitted or paroled into the country … lack any liberty interest in … certain additional procedures." ECF No. 5 at 3. But petitioner was in fact paroled, even if briefly.

11

petitioner who was also released from ICE detention through an interim notice authorizing parole). Petitioner's prior release amplifies his protected liberty interest.

Respondents rely in large part on DHS v. Thuraissigiam, 591 U.S. 103 (2020), to argue that petitioner's due process rights as an unadmitted non-citizen extend no further than the procedures provided by the INA. The Court finds Thuraissigiam materially distinguishable for two reasons. First, as explained in Padilla, Thuraissigiam's "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." 704 F.Supp.3d at 1171-72. Accordingly, Thuraissigiam "does not foreclose … due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." Id. at 1172. Second, Thuraissigiam did not concern a situation where an individual had been conditionally released into the United States before again being detained and thus does not address what additional due process protections might be required in such circumstances. In conclusion, petitioner is not precluded from seeking a bond hearing under the Due Process Clause.

**B. Petitioner Is Entitled to a Prompt Bond Hearing**

The Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to find that petitioner is entitled to a bond hearing where respondents would bear the burden of demonstrating by clear and convincing evidence that he is a flight risk or danger to the community. This is well-trod territory in recent habeas litigation and the undersigned largely adopts the framework and reasoning from similar cases. See, e.g., Maksim v. Warden, Golden State Annex, et al., No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328 (E.D. Cal. Oct. 9, 2025) (applying Mathews in case involving § 1225(b)(1) detention to order a bond hearing before an immigration judge).

Private interest: Petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing. Petitioner has been detained more than 13 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). While some

of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, his current detention is attributable to the government's appeal of the grant of withholding of removal. If the government is unsuccessful on appeal, it may then seek to deport him to a third country and detain him while it does so, further prolonging his detention. Moreover, petitioner already began to establish ties to the United States during his earlier period of parole and community members waiting to support him should he be released from custody. ECF No. 12-1 at 3-4. This factor favors petitioner.

Risk of erroneous deprivation: "[T]he probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all." Maksim, 2025 WL 2879328, at *5; see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); Diop v. ICE, 656 F.3d 221, 235 (3d Cir. 2011) (detention of an non-citizen for "nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"). This factor also favors petitioner.

Government's interest: Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim, 2025 WL 2879328, at *5 (citations omitted). "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden. The government's interest in further detention is also arguably diminished given that petitioner has already won withholding of removal and the prospect of respondent DHS either prevailing on appeal to the BIA or removing petitioner to a third country is speculative. See Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006) (ordering release of asylum seeker who had won withholding of removal and was detained

under § 1225(b) despite government's allegations that he was a terrorist where government had prolonged his detention through its appeals).[7]  This factor also weighs in favor of petitioner.

Accordingly, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondents be ordered to provide him a bond hearing before an IJ within seven days where the IJ must order petitioner released unless the IJ finds that he is a risk of flight or danger to the community by clear and convincing evidence.  See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance).

### IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall update petitioner's name on the docket to the spelling listed in the case caption of this order.

2. Petitioner's motion to proceed in forma pauperis (ECF No. 13) is granted.

3. Based on his demonstration of indigency, counsel is hereby appointed to represent petitioner for the duration of proceedings in this court.  See 18 U.S.C. § 3006A(a)(2)(B); see also Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

**IT IS FURTHER RECOMMENDED** that:

1. Respondents' motion to dismiss (ECF No. 5) be denied.

2. Petitioner's § 2241 petition (ECF No. 1) be granted.

3. Respondents be ordered to provide petitioner a bond hearing before an IJ within seven days where the IJ must order petitioner released unless the IJ finds that he is a risk of flight or danger to the community by clear and convincing evidence.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period

---

[7] Petitioner has not argued that Nadarajah applies to the instant action and the current record in not clear as to whether petitioner is subject to detention that would properly be deemed both prolonged *and* indefinite.

14

is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 31, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE